(164 App. Div. 267)

PEOPLE ex rel. HOLMSTROM v. INDEPENDENT DOCK BUILDERS'
BENEVOLENT UNION OF GREATER NEW YORK
AND VICINITY.   (No. 6359.)

(Supreme Court, Appellate Division, First Department.   November 6, 1914.)

1. TRADE UNIONS (§ 4*)—EXPULSION OF MEMBERS—WAIVER OF IRREGULARITIES.
   Where, on the trial of charges against a member of an incorporated labor union before the executive board, he was informed of his right to counsel and to examine the witnesses, and was asked whether he would proceed before the board at that meeting, and announced that he would proceed, and did not require any lawyer, he waived all preliminary questions, and submitted himself to the jurisdiction of the board.

   [Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. § 4.*]

2. TRADE UNIONS (§ 4*)—EXPULSION OF MEMBERS—EFFECT OF BY-LAWS.
   A by-law of an incorporated labor union, providing that any member should be subject to forfeiture of his membership or to any action the body might see fit to take, after a fair trial before the executive board or the body in session, reserved to the corporation the power to pronounce judgment approving the finding and to fix the punishment or penalty after the trial before the board, or before the members of the corporation, and a member could not be disciplined except by the body itself; and hence a

---

'For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

resolution that certain charges against a member be brought before the executive board was a nullity, so far as it provided that the action of the executive board should be final.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. § 4.*]

3. TRADE UNIONS (§ 4*)—EXPULSION OF MEMBERS—EFFECT OF BY-LAWS.

Under a by-law of an incorporated labor union, providing that any member should be subject to forfeiture of his membership, or to any action the body might see fit to take, after a trial before the executive board, or the body in session, where, after a member was found guilty of charges against him by the executive board, he was excluded from a meeting of the union without any action having been taken by the corporation, but subsequently, and after the institution of mandamus to compel reinstatement, the corporation, at a meeting at which he was not present, without any notice to him, voted to approve the minutes and findings of the executive board, and to expel the member from the union, his expulsion was illegal, as he was entitled to be heard on the question whether the action of the executive board should be affirmed and what punishment should be inflicted.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. § 4.*]

4. ASSOCIATIONS (§ 10*)—EXPULSION OF MEMBERS—REVIEW BY COURTS.

The courts will review the internal affairs of a voluntary association or membership corporation regarding their disciplinary proceedings only to determine whether the proceeding was in accord with the constitution and by-laws of the organization, whether the charges were substantial, and whether the member had fair notice and an opportunity to be heard, and if he received fair play the court will not substitute its judgment for that of the organization.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 10–12; Dec. Dig. § 10.*]

Appeal from Special Term, New York County.

Mandamus by the People, on relation of August Holmstrom, against the Independent Dock Builders' Benevolent Union of Greater New York and Vicinity. From an order denying the application for a peremptory or alternative writ of mandamus requiring the respondent to reinstate relator, relator appeals. Reversed, and motion for peremptory writ granted.

See, also, 149 N. Y. Supp. 774.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Benjamin W. Moore, of New York City, for appellant.

John J. O'Connor, of New York City, for respondent.

CLARKE, J. The respondent is a membership corporation duly organized under the laws of the state of New York, commonly called a labor union. Relator was a member thereof. Section 12 of article 12 of the by-laws provides as follows:

"Any elected or appointed officer or member whose act or acts are detrimental to the welfare of the organization, whether direct or against an officer or member of the organization itself, shall be subject to forfeiture of his office or membership, or any action the body may see fit to take after a fair trial before the executive board or the body in session."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1, 2] Certain charges were made against the relator, and at a meeting of the defendant held on the 12th of March, 1914, a resolution was adopted that the charges be brought before the executive board, and that the action of said board be final. A meeting of the executive board, all the members being present, was held on March 24th, relator being present. He was informed that he was entitled to counsel and was entitled to ask any question of the witnesses he desired to. He was asked whether he would proceed before the board at that meeting. He announced that he would proceed and did not require any lawyer. He therefore waived all preliminary questions and duly submitted himself to the jurisdiction of the board, whereupon a number of witnesses were examined and the executive board found the relator guilty of the charges made. It will be noted that the by-law governing disciplinary proceedings expressly provides that a member "shall be subject to forfeiture of his office or membership, or any action *the body may see fit to take,* after a fair trial before the executive board or the body in session." It is plain, and is now conceded, that the power to act—that is, to pronounce judgment approving the finding and to fix punishment or penalty—was reserved to the corporation, after a fair trial, either before the executive board or a meeting of the members of the corporation itself. The initial resolution, therefore, providing in this instance that the action of the executive board should be final, was unwarranted by the by-laws. It is clear that no member could be disciplined except by the body itself.

[3] At the next regular meeting of the respondent, held on the 26th of March, after the trial before the executive board, relator presented himself for admittance to the meeting; but the sergeant at arms, under the orders of the president, refused to admit him, upon the ground that he had been expelled and had no rights there, whereupon, on the 30th of March, upon affidavits verified on the 27th and the 30th, he obtained from a justice of the Supreme Court an order requiring respondent to show cause why a peremptory or alternative writ of mandamus should not issue, requiring the respondent forthwith to restore and reinstate the relator to all his rights and benefits in said organization, which order was returnable on April 6th. The hearing was adjourned to April 8th, upon the request of the respondent, and on the 8th it was adjourned to April 13th. On April 8th, relator's attorney was furnished with a copy of the replying affidavits of the respondent. These affidavits, which were verified on April 6th, stood upon the proposition that the proceedings had been regular and in accordance with the provisions of the by-laws, and no question was raised therein but that relator had been expelled and that such expulsion was justifiable and proper. On April 10th relator's attorney was notified by the attorney for respondent that he was going to change the affidavits to meet a new condition, and, being asked what that was, replied: "Something was done last night, but just what was done I don't know." On April 13th amended affidavits on behalf of the respondent were handed in, which set up that at the meeting of the respondent held on April 9th the minutes and findings of the executive board of March 24th were read, and, upon the read-

ing of the minutes and findings, motion was duly made that the minutes and findings of the board be approved, and that relator be expelled from the union, and that motion was carried.

[4] The well-established rule governing interference by the courts with the internal affairs of voluntary associations and membership corporations in regard to their disciplinary proceedings is that the court will look into the record to see whether the practice and proceeding has been in accordance with the constitution and by-laws of the organization, whether the charges are substantial, and whether the member has had fair notice and opportunity to be heard; in short, has the member received fair play? If so, the court will not substitute its judgment for that of the organization. The cases bearing upon this subject may be found collected in Williamson v. Randolph, 48 Misc. Rep. 96, 96 N. Y. Supp. 644.

The difficulty with the case at bar is that it is conceded that relator was denied admission to the meeting of the respondent on the 26th of March, when the report of the executive board was presented, upon the ground that he had been expelled, and that he had no notice of the meeting on the 9th of April, while these proceedings in court were pending, and so, of course, was not present thereat. The fact that the action alluded to was taken at such meeting during the pendency of this proceeding is convincing proof that the respondent had been advised that the original resolution conferring final jurisdiction upon the executive board was illegal and that the organization alone had the power to take final action. But such final action, taken in the absence of relator, without notice to him, and after he had been officially denied admission to the meeting of the organization upon the ground that he had been expelled, deprived him of the right to be heard upon the question whether the action of the executive board should be affirmed and what punishment should be inflicted, if any. He was, therefore, deprived of a substantial right given him by the organic law of the organization of which he was a member, and has, therefore, been illegally expelled therefrom.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion for the issuance of a peremptory writ of mandamus requiring his reinstatement granted, with $10 costs. All concur.

