In the Matter of HERMAN P. POSNER, Respondent, *v.* BRONX COUNTY MEDICAL SOCIETY, Appellant.

First Department, June 27, 1963.

*Barry Golomb* of counsel (*Shagan, Edwinn & Golomb* with him on the brief), for appellant.

*Horace S. Manges* of counsel (*Jacob F. Raskin* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for respondent.

BOTEIN, P. J. The petitioner in this proceeding, brought under article 78 of the Civil Practice Act, is a doctor of medicine whose practice is almost wholly confined to workmen's compensation cases. The respondent is the Bronx County Medical Society, of which petitioner was a member. As a consequence of action taken by respondent or its committees, which petitioner complains was invalid, he was suspended from membership for one year, and his authorization to render medical care under the Workmen's Compensation Law was revoked by the Chairman of the Workmen's Compensation Board, with leave to apply for reauthorization after the expiration of a year. An order of

Special Term annulling the action complained of, and granting related relief, is the subject of this appeal by the respondent.

Section 13-b of the Workmen's Compensation Law provides, with certain exceptions, that no person shall render medical care under that law without authorization by the Chairman of the Workmen's Compensation Board. Section 13-d, quoted in part below, establishes a procedure by which the Chairman may revoke the authorization of a physician found guilty of misconduct: " The medical society of the county in which the physician's office is located at the time or a board designated by such county society * * * shall investigate, hear and make findings with respect to all charges as to professional or other misconduct of any authorized physician as herein provided under rules and procedure to be prescribed by the medical appeals unit, and shall report evidence of such misconduct, with their findings and recommendation with respect thereto, to the chairman. * * * The medical appeals unit may review the findings and recommendation of such medical society or board, and on application of the physician accused must do so, and may reopen the matter and receive further evidence. The findings, decision and recommendation of such society, board and medical appeals unit shall be advisory to the chairman only, and shall not be binding or conclusive upon him."

Respondent's proceedings with respect to petitioner originated with receipt of a complaint from the Vice-Chairman of the Workmen's Compensation Board, alleging that petitioner had paid kickbacks to or split fees with a supervisory employee of a casualty insurance company whose duties included the assignment of cases to physicians for examination and report. A hearing on the charge was held by respondent's Board of Censors, a committee with power under respondent's by-laws to examine into charges of unethical conduct preferred against a member and to report its findings to the Comitia Minora, which is respondent's board of directors. At the hearing petitioner admitted the charge, so that, as he says, " the sole issue for determination by the Board of Censors was the nature and severity of the penalty to be imposed ". The Board of Censors unanimously recommended that petitioner be suspended from membership for one year, and that a recommendation be made to the Chairman of the Workmen's Compensation Board that petitioner's name be removed for a year from the list of authorized physicians. On January 23, 1962 the Comitia Minora unanimously approved the recommendations of the Board of Censors, and on February 6, 1962 it recommended to the Chairman that

petitioner's name be removed from the list of authorized physicians for a period of one year.

Sometime after January 23, 1962 petitioner invoked the following by-law of the society: " The accused may appeal from the action of the Comitia Minora to the Society, which shall consider the charges at a Special Meeting, convened for that purpose, at which only members in good standing shall be present." Accordingly, a special meeting of the membership was called, by written notice dated March 16, 1962, " to hear an appeal by a member, Dr. Herman P. Posner, from disciplinary action taken by the Comitia Minora on recommendation of the Board of Censors ". The notice went on to state that the " action " referred to consisted of " a suspension from Society membership for one year * * * and a recommendation to the Chairman of the Workmen's Compensation Board that Dr. Posner's name be removed for a period of one year from the list of physicians ".

At the special meeting, attended by 77 members, petitioner's counsel spoke on behalf of petitioner and asked that the discipline be limited to censure. Thereafter the presiding officer ruled, over objection by petitioner's counsel, that " only the disciplinary action of the Society concerning the suspension of membership would be considered in the appeal." A secret ballot was then taken on the matter of the suspension and the action of the Comitia Minora was affirmed by a vote of 44 to 32, with one blank ballot. Prior to the vote petitioner's counsel contested the right of the members of the Board of Censors and the Comitia Minora who were present to participate in the voting but was overruled by the chair. Had the ballots of such members been discarded the vote in favor of affirmance would have stood at 31. Whether the blank ballot was petitioner's does not appear.

As permitted by the by-laws (and, see, Membership Corporations Law, § 174) petitioner then appealed to the Medical Society of the State of New York, but was met with a unanimous affirmance by its Judicial Council. Pursuant to the by-laws of the Medical Society of the State of New York, petitioner then appealed to the American Medical Association. Before its Judicial Council petitioner raised two points — first, that the members of the Board of Censors or the Comitia Minora who participated in the proceedings of those committees relating to the charge against petitioner should not have been permitted to vote at the special meeting; second, that petitioner was illegally deprived of his right of appeal to respondent's membership from the recommendation of the Comitia Minora to the

Chairman of the Workmen's Compensation Board. On the first point, the Judicial Council disagreed with petitioner and affirmed the decision of respondent and the Medical Society of the State of New York suspending petitioner from membership. On the second point, the Council, after stating that it "has no jurisdiction over the action of the Chairman of the Workmen's Compensation Board", expressed the opinion that petitioner should have been allowed "to appeal to the society the Comitia Minora's recommendation to the Workmen's Compensation Board". The basis of the opinion was that the words "action of the Comitia Minora" in the above-quoted appeal provision of respondent's by-laws included that recommendation, as evidenced by the phrasing of the notice of the special meeting. The same two points form the foundation of this proceeding.

As to the first point chapter VIII of respondent's by-laws is informative. It provides as follows: "The deliberation of this Society shall be governed by parliamentary usage, as contained in ' Robert's Rules of Order, Revised ' when not in conflict with the By-Laws of this Society or of the Medical Society of the State of New York " (cf. *Ostrom* v. *Greene,* 161 N. Y. 353, 362). No such conflict is intimated. Section 75 of Robert's Rules of Order, Revised, captioned " Trial of Members of Societies ", provides that when a member has been tried by a committee and it reports to the society the result of the trial, with its recommendations regarding punishment, " The members of the committee should vote upon the case the same as other members."

The mandate of chapter VIII aside, we are not persuaded that the suffrage at the special meeting was " contrary to natural justice " (see *Young* v. *Eames,* 78 App. Div. 229, 241, affd. 181 N. Y. 542), or inconsistent with " fair play " (see *People ex rel. Holmstrom* v. *Independent Dock Bldrs.' Benevolent Union,* 164 App. Div. 267, 270). The charge considered by the Board of Censors and the Comitia Minora did not originate within those groups; they were not the accusers (cf. *Law* v. *Chartered Inst. of Patent Agents* [1919] 2 Ch. 276, 285; *Avery* v. *Moffatt,* 187 Misc. 576, 584–586, Shientag, J.). They weighed no controverted issue of fact, for petitioner admitted his guilt. No evidence appears of bias, bad faith, self-interest, personal animosity or intemperate advocacy on the part of any committeeman at any time (cf. *Wilcox* v. *Supreme Council of Royal Arcanum,* 210 N. Y. 370; *People ex rel. Meads* v. *McDonough,* 8 App. Div. 591; *Reid* v. *Medical Soc. of Oneida County,* 156 N. Y. S. 780, affd. 177 App. Div. 939; *National League of Comm. Merchants* v. *Hornung,* 148 App. Div. 355, 153 App. Div. 937, affd. 211 N. Y. 575).

The desideratum of fair play naturally evokes allusion to judicial processes by way of analogy (see, e.g., *Wilcox* v. *Supreme Council of Royal Arcanum, supra*), and petitioner points out that an Appellate Judge may not sit in review of a decision he had rendered as a Trial Judge. Inflexible acceptance of the analogy, however, would impose a burden of meaning on the word "appeal" in the by-laws which in our opinion it cannot carry here.[1] More germane might be the right of a committee of Judges, reporting to a board of Justices of which they were members, to vote as members of such board upon their recommendations. What a member implies when he appeals to the entire society from a committee's recommendation is merely that he thinks the committeemen, if they remain unpersuaded, and any others similarly inclined, will be outvoted. Dissatisfied with the deliberation of but a few of his fellows, he wants the deliberation of all. While pro tem. we have abandoned Robert's Rules as a mandated guide, resort to that manual for light on relevant parliamentary usages of deliberative assemblies is permissible (*Ostrom* v. *Greene*, 161 N. Y. 353, 362); and of significance also are the views of the two Judicial Councils, both presumably familiar with the disciplinary practices of medical societies.

Passing on petitioner's second point would require us to move into an area encompassing the action of the Chairman of the Workmen's Compensation Board, for petitioner asserts that in relying on the Comitia Minora's recommendation the Chairman "acted on a void recommendation". The Chairman, however, is not a party to this proceeding and in his absence we are reluctant to make determinations clouding his acts (see *Matter of Coombs* v. *Edwards*, 280 N. Y. 361, 364; 55 C. J. S., Mandamus, p. 40, § 15). The questions presented here, involving the exercise of his powers and the interrelation between the appellate process of medical societies and that established by the Workmen's Com-

---

1. Nor does petitioner adequately demonstrate that acceptance of his judicial analogy would have altered the result. Under it, petitioner himself would be disqualified to vote and he has failed to show that the one blank ballot was his. If the 77 members present at the special meeting are to be deemed a court, the number disqualified, including petitioner, would be 14, leaving a qualified bench of 63. A vote of 32 for reversal would be sufficient, provided the blank ballot was petitioner's. If it was not his, then his own ballot must be discarded, reducing the 32 to 31, which is insufficient. If because of the blank ballot the court be deemed to consist of 76, the qualified bench would be reduced from 63 to 62. If the blank ballot was petitioner's, a vote of 32 for reversal would be sufficient. If, however, the blank ballot was not petitioner's then upon discard of his ballot the 32 would become 31, the result a tie and the vote for reversal insufficient.

pensation Law, cannot be resolved satisfactorily without a presentation of the Chairman's views.

We need not discuss whether these considerations would be of less weight if it were plain that the Chairman acted on a void recommendation. Such is not the case. The minutes of the special meeting include a statement by respondent's counsel which indicates that respondent has a workmen's compensation committee — evidently the "board designated by such county society" referred to in section 13-d of the Workmen's Compensation Law; and that, instead of having separate hearings before that committee and before the Board of Censors to consider the charge against petitioner, a single hearing before the latter body was held in the interest of expedition. As far as the record reveals, petitioner made no objection about this procedure either to the Board of Censors or to the Comitia Minora; indeed his petition states that the hearing before the Board of Censors was held pursuant to the by-laws and section 13-d. Accordingly the recommendation received by the Chairman may be said to have come from a "board designated by such county society," leaving the statutory medical appeals unit of the Workmen's Compensation Board as the next forum — or so the Chairman could forcefully urge.[2] That these facts were presented to the American Medical Association Judicial Council is not apparent from its opinion. Incidentally they tend to explain the wording of the notice of the special meeting; the draftsman, it would seem, overlooked that the Board of Censors by consent had acted in two capacities. That petitioner may have been able to take intramural advantage of a seeming inadvertence does not, we should suppose, affect the Chairman's functioning — certainly not in the absence of an opportunity for him to be heard on these matters.

The order of Special Term entered May 13, 1963 should be reversed, on the law and on the facts and in the exercise of discretion, and the petition dismissed, with costs.

McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Order entered on May 13, 1963, unanimously reversed, on the law and on the facts and in the exercise of discretion, with $20 costs and disbursements to the appellant, and the petition dismissed.

---

2. Respondent's brief states that "petitioner actually did appeal directly to the Medical Appeals Unit."